**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTINA SCANNELL,<br><br>                    Plaintiff,<br>vs.<br>TINA PITT; STEVE BAKER; and<br>SUNITA COOKE,<br><br>                    Defendants. | CASE NO. 10cv51 WQH (BLM)<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion for Judgment on the Pleadings filed by Defendants Tina Pitt, Steve Baker, and Sunita Cooke. (Doc. # 13).

**BACKGROUND**

Plaintiff Christina Scannell initiated this action by filing her Complaint on January 7, 2010. (Doc. # 1). On February 24, 2010, Defendants filed their answer. (Doc. # 9). On March 12, 2010, Defendants filed their Motion for Judgment on the Pleadings. (Doc. # 13).

**ALLEGATIONS OF THE COMPLAINT**

Plaintiff was employed by the Grossmont-Cuyamaca Community College District ("the District") as an adjunct professor in the Media Communications Department of Grossmont College, which is located in San Diego County. (Doc. # 1 at ¶¶ 4-5, 15). Defendants are also employed by the District. *Id.* at ¶¶ 7-9. Baker is the Acting Dean of Communication and Fine

1  Arts at Grossmont College. *Id.* at ¶ 7. Cooke is the President of Grossmont College. *Id.* at
2  ¶ 8. Pitt is the Vice President for Academic Affairs of Grossmont College. *Id.* at ¶ 9.
3    Plaintiff began working at Grossmont College in January of 2008. *Id.* at ¶ 15. Plaintiff
4  taught a course called Media Communications 132 ("MCOM 132"), which produced the
5  Grossmont College student newspaper, *The Summit*. *Id.* at ¶ 16. Plaintiff's contract was
6  renewed to teach the Fall 2008 and Spring 2009 semesters. *Id.* at ¶ 17. In November of 2008,
7  Plaintiff received a forwarded email from Pitt which stated that any class with fewer than 15
8  registered students would be cancelled one week prior to the Spring 2009 semester. *Id.* at ¶
9  18. Prior to the Spring 2009 semester, MCOM 132 had never had 15 or more students. *Id.* at
10 ¶ 19. On December 5, 2008, Plaintiff wrote an editorial for *The Summit* which was critical of
11 the decision to cancel classes which did not enroll a minimum of 15 students. *Id.* at ¶ 22. On
12 January 7, 2009, Plaintiff emailed fellow board members of the San Diego Chapter of the
13 Society of Professional Journalists asking them to spread the word that if additional students
14 did not register for MCOM 132, the class and *The Summit* newspaper might be cancelled. *Id.*
15 at ¶ 30. Plaintiff submitted an edited version of her editorial from the December 5, 2008
16 edition of *The Summit* for publication in the Society of Professional Journalists' quarterly
17 newsletter. *Id.* The editor of the quarterly newsletter asked Plaintiff for contact information
18 for Pitt and Cooke to allow readers to contact them with comments or concerns on the possible
19 cancellation of classes. *Id.* Plaintiff provided the contact information and informed Baker that
20 she had done so. *Id.* at ¶¶ 21, 31. Baker responded on January 9, 2009, warning Plaintiff that
21 involving "'upper administrators in a controversy . . . will not help gain support for your
22 class.'" *Id.* at ¶ 32. Baker sent a second email on the same day to advise her that Pitt stated
23 she would allow the class and newspaper to continue if there was enough "energy" behind the
24 program. *Id.*
25   On January 21, 2009, Plaintiff met with Cooke, Baker, and Pitt. *Id.* at ¶ 43. Cooke told
26 Plaintiff that the article in the quarterly newsletter was not "journalistic" and that "Plaintiff
27 should have consulted district administrators for 'the facts' as a way of showing students how
28 to be good journalists." *Id.* at ¶ 43. Cooke "accused Plaintiff of not having good intentions

with Plaintiff's editorial in *The Summit* . . . ." *Id.* Baker "suggested that *The Summit* should be a beacon for the district, covering district news positively as a political move." *Id.* at ¶ 44. In response, "Plaintiff attempted to explain that student press law and the California Education Code prevent Plaintiff, as a staff advisor, from dictating the content of a student newspaper." *Id.*

On January 27, 2009, MCOM 132 met for the first time for the spring semester. *Id.* at ¶ 52. "Baker attended the class and informed students that if one more student does not enroll, the class would be canceled. Baker also undermined Plaintiff's authority as an instructor by suggesting ways to conduct the class in front of Plaintiff's students." *Id.* By the end of the first week of classes, fifteen students were enrolled in MCOM 132. *Id.* at ¶ 53. Plaintiff discovered, however, that a number of other classes with fewer than fifteen students had not been canceled, despite the stated policy of cancelling all classes with fewer than fifteen students. *Id.* at ¶ 55.

On March 12, 2009, Baker emailed Plaintiff about a student editorial which had run in the March 10, 2009 edition of *The Summit*. *Id.* at ¶ 68. Baker stated the editorial was "'inflammatory'" and "'possibly racist'" and stated that he "'expected'" space in the next edition of *The Summit* for a two-page centerpiece rebuttal article which would be referenced on the front page. *Id.* Baker also instructed Plaintiff to meet with him to discuss "'instructional issues relative to MCOM 132 and Grossmont college.'" *Id.* Plaintiff sent Baker and Pitt an email with an attached handout on student press law, an excerpt of the California Education Code, and *The Summit*'s policies. *Id.* at ¶ 71. On March 16, 2009, Baker replied that the laws were "surprising" and stated that "Plaintiff 'and her students' . . . don't 'believe' there 'is such a thing as journalistic ethics.'" *Id.* at ¶ 72. On March 17, 2009 Plaintiff replied that the student editorial was protected by the First Amendment, the California Constitution, and the California Education Code. *Id.* at ¶ 73.

Plaintiff's employment contract with the District ended on May 26, 2009. *Id.* at ¶ 75. Plaintiff and *The Summit* received awards for Excellence in Journalism from the San Diego Chapter of the Society of Professional Journalists. *Id.* at ¶¶ 76-77. Plaintiff's contract with

1  the District was not renewed and the District hired a less qualified person to teach MCOM 132
2  for the Fall 2009 semester. *Id.* at ¶¶ 78-79.
3     Plaintiff alleges three causes of action pursuant to 42 U.S.C. § 1983: (1) violation of her
4  First Amendment rights; (2) conspiracy to interfere with her First Amendment rights; and (3) a
5  request for injunctive relief under federal and state law. *Id.* at ¶¶ 80-100.
6     In support of her first cause of action, Plaintiff alleges her editorial in *The Summit* and
7  her article in the newsletter of the San Diego Chapter of the Society of Professional Journalists
8  are First Amendment protected speech. *Id.* at ¶¶ 81-83. Defendants failed to renew
9  Plaintiff's contract in retaliation for Plaintiff's speech. *Id.* at ¶¶ 84-87. Defendants acted under
10 color of state law in denying Plaintiff her free speech rights. *Id.* at ¶ 89. Plaintiff has suffered
11 economic damages, including lost wages, and pain and suffering as a result of Defendants'
12 actions taken in violation of the First Amendment. *Id.* at ¶¶ 90-91. Defendants acted "with
13 conscious disregard for [Plaintiff's] rights." *Id.* at ¶ 92. Plaintiff therefore seeks punitive
14 damages. *Id.*
15    In support of her second cause of action, Plaintiff alleges Defendants conspired to
16 deprive her of her constitutional right to free speech and to retaliate against her for the editorial
17 and article she wrote. *Id.* at ¶¶ 95-96. Plaintiff alleges she was deprived of her constitutional
18 right to free speech as a result of this conspiracy, and that she suffered damages including
19 "humiliation . . . loss of personal and professional reputation . . . . [and] lost wages and
20 benefits." *Id.* at ¶¶ 97-99. Defendants acted "with conscious disregard of her rights." *Id.* at
21 ¶ 100. Plaintiff therefore seeks punitive damages. *Id.*
22    In support of her third cause of action, Plaintiff requests a permanent injunction
23 requiring Defendants reinstate Plaintiff as an adjunct professor teaching MCOM 132 or an
24 equivalent course. *Id.* at 16.
25                                    **STANDARD OF REVIEW**
26    Judgment on the Pleadings is proper pursuant to Federal Rule of Civil Procedure 12(c)
27 "after the pleadings are closed but within such time as not to delay trial," if "the moving party
28 clearly establishes on the face of the pleadings that no material issue of fact remains to be

resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990). "For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Id.* If a court grants judgment on the pleadings, it is a decision on the merits. *See General Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventists Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

**ANALYSIS**

**I.    Request for Judicial Notice**

Defendants request that the Court take judicial notice of Plaintiff's editorial printed in *The Summit*, attached as Exhibit A, and Plaintiff's article printed in the San Diego Chapter of the Society of Professional Journalists' newsletter, attached as Exhibit B. (Doc. # 13-2 at 1). Defendants contend judicial notice is proper because these documents were referenced in the Complaint and the documents are not "subject to reasonable dispute." *Id.* at 2, 4-5.

In ruling on a motion which attacks the sufficiency of the pleadings, courts generally do not consider evidence which was not attached to the complaint. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.3d 1242, 1555 (9th Cir. 1990). However, "[a] district court ruling on a motion to dismiss may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998) (quotation omitted). Allowing a district court to consider documents upon which the complaint necessarily relies "is supported by the policy concern underlying the rule: Preventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Id.* (citation omitted). For the same reasons, a court may take judicial notice of such documents in considering a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See United States v. 14.02 Acres*, 547 F.3d 943, 955 (9th Cir. 2008) (permitting judicial notice on a motion to dismiss, or in the alternative, for judgment on the pleadings).

1    The documents attached to the motion were referenced in the complaint and Plaintiff
2 does not dispute their authenticity. The Court will therefore take judicial notice of these
3 documents.

## II.    Sovereign Immunity

5    Defendants contend they are entitled to judgment as a matter of law pursuant to Federal
6 Rule of Civil Procedure 12(c). (Doc. # 13 at 2). Defendants contend that any retrospective
7 relief, including injunctive relief, is barred by sovereign immunity. (Doc. # 13-1 at 5).
8 Defendants contend that "[s]ince Plaintiff's term of employment expired on May 26, 2009, any
9 action in this case would require improper retrospective relief." *Id.* at 6.  Plaintiff contends
10 that she has properly brought her first and second cause of action against Defendants in both
11 their official and personal capacities. (Doc. # 16 at 12). Plaintiff contends the relief she
12 seeks—rehiring—is prospective, not retrospective. *Id.*

13    While Defendants are correct that a plaintiff may not obtain retrospective relief in a suit
14 against a government official acting in his or her official capacity, *see Kentucky v. Graham*,
15 473 U.S. 159, 167 (1985), the relief Plaintiff seeks is not retrospective. Plaintiff is not seeking
16 lost wages as a result of Defendants' previous failure to rehire her, rather, she is seeking an
17 order requiring Defendants to rehire her to teach future courses at Grossmont College. The
18 Court concludes Defendants are not entitled to judgment as a matter of law on the grounds of
19 sovereign immunity.

## III.    Protected Speech

21    Defendants contend that Plaintiff's speech is not protected by the First Amendment
22 because it did not touch on a matter of public concern. (Doc. # 13-1 at 8). Defendants contend
23 the editorial published in *The Summit* "was [about] an internal dispute between plaintiff and
24 defendants aired by plaintiff because she perceived she would lose her teaching contract." *Id.*
25 at 9. Defendants contend Plaintiff's speech disrupted the workplace, thus failing the balancing
26 test set out in *Pickering v. Board of Education*, 391 U.S. 563 (1968), which balances the
27 interests of the employee in commenting on matters of public concern against the interests of
28 the employer in avoiding workplace disruption. *Id.* at 9-10.

Plaintiff contends that her speech clearly touched on matters of public concern and that "there is no evidence that [her] speech interfered in any way with school operations." (Doc. # 16 at 13). Plaintiff contends the *Pickering* test cannot be applied prior to discovery because it is a factual inquiry into whether her speech caused actual interference with the operation of the school. *Id.* at 16.

In *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), the Supreme Court held that it is unconstitutional to "compel[] [public school teachers] to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public schools in which they work." Where a public employee such as professor in a public college brings a First Amendment retaliation claim, the employee must establish that the speech was constitutionally protected and that it was a substantial factor motivating termination. *Moran v. State of Washington*, 147 F.3d 839, 848-49 (9th Cir. 1998) (citation omitted). "[P]ublic employee-speech cases simply are not typical First Amendment fare." *Id.* The range of speech protected in public employee cases is much narrower—only speech which "comments upon matters of public concern" is protected. *Id.* at 845. Once the employee has established that the speech involves a matter of public concern, the employee must also show that the "value of the speech outweighs the costs imposed by the speech" in order to prevail. *Id.* at 846.

Plaintiff's statements in this case clearly qualify as comments on matters of public concern. As in *Pickering*, Plaintiff commented publicly on issues related to the funding and quality of education in her school. Such topics "relate to [a] matter of political, social, or other concern to the community." *See Johnson v. Multanomah County*, 48 F.3d 420, 423 (9th Cir. 1995) (citation and internal quotation marks omitted). Defendants have cited to no case law which would permit this Court to conduct a *Pickering* balancing test weighing the "value of the speech" by Plaintiff against any costs imposed by her speech at the pleading stage. Such a "factual inquiry" requires a developed record to determine whether the speech at issue caused actual disruption in Plaintiff's workplace and, if there was disruption, whether that disruption is of the type cognizable under *Pickering*. *See* id. at 427 (" [T]he County must do more than

show mere disruption. Instead, it must show actual injury to its *legitimate* interests.) (emphasis added); *Hyland v. Wonder*, 927 F.2d 1129, 1139 (9th Cir. 1992) ("Application of this balancing test entails a factual inquiry into such matters as whether the speech (i) impairs discipline or control by superiors, (ii) disrupts co-worker relations, (iii) erodes a close working relationship premised on personal loyalty and confidentiality, (iv) interferes with the speaker's performance of her or his duties, or (v) obstructs the routine operation of the office."). The Court concludes applying the *Pickering* balancing test is inappropriate at this time because there is no factual record of any workplace disruption.

## IV.  Qualified Immunity

Defendants contend that even if Plaintiff establishes that her speech is protected and that the *Pickering* balancing test tips in her favor, they are entitled to qualified immunity. (Doc. # 13-1 at 12-13). Defendants contend that "qualified immunity will apply when a balancing test is required because public officials cannot be expected to predict the outcome of such balancing or engage in it themselves." *Id.* (citation omitted).

Plaintiff contends qualified immunity cannot be addressed at the pleading stage because it is "clearly established that a public employee may not be dismissed for no reason other than protected speech." (Doc. # 16 at 13). Plaintiff contends qualified immunity does not protect defendants who knowingly violated the law. *Id.* at 16-17. Plaintiff contends that her allegations that Defendants acted knowingly and intentionally with the express purpose of violating her First Amendment rights preclude judgment on the pleadings on the issue of qualified immunity. *Id.* at 17. Plaintiff contends *Pickering* clearly established the "right not to be dismissed from a teaching position in retaliation for writing a newspaper article on a matter of public concern" as of 1968. *Id.*

In analyzing qualified immunity, courts must "assume the disputed facts in the light most favorable to [a plaintiff] and then decide, under those facts, whether the school officials violated any . . . clearly established federal Constitutional rights." *Brewster v. Bd. of Ed.*, 149 F.3d 971, 977 (9th Cir. 1998). The Ninth Circuit has held that "as early as 1983, it could hardly be disputed that an individual had a clearly established right to be free of institutional

1 retaliation by government officials based on that individual's constitutionally protected
2 speech." *Hyland v. Wonder (Hyland II)*, 117 F.3d 405, 410 (9th Cir. 1997) (internal citation
3 and quotation marks omitted). The Supreme Court's decision in *Pickering* established as of
4 1968 that a public school teacher could not be fired for criticizing his school's administration
5 and allocation of funding. *See* 391 U.S. at 574. In this case, Plaintiff's allegations and the
6 content of her letter and article are so similar to the allegations in *Pickering* that they preclude
7 qualified immunity at the pleading stage. *Id.* Here, Plaintiff has alleged her contract was not
8 renewed in retaliation for speech which criticized her employer's allocation of funding and
9 decision to cut classes with fewer than 15 students with the intention of violating her First
10 Amendment rights. Because Plaintiff has alleged "(1) the loss of a valuable government
11 benefit (2) in retaliation for their speech (3) on a matter of public concern," her factual
12 allegations are sufficient to plead that Defendants violated her clearly established federal
13 Constitutional rights. *See Hyland II*, 117 F.3d at 412. The Court concludes the Defendants
14 are not entitled to qualified immunity at this stage of the proceedings.

### V.   Claims Against Defendants in their Personal Capacity

16      Defendants contend that Plaintiff has failed to allege any facts which would allow her
17 to sue them in their individual capacities. (Doc. # 13-1 at 14). Defendants contend that "[i]n
18 order to bring suit against the defendants in their individual capacities, plaintiff must plead the
19 defendants' actions were *ultra vires*, or unconstitutional." *Id.* Defendants contend that
20 "plaintiff has explicitly alleged that she was employed by the District" not by the individual
21 Defendants. *Id.* Plaintiff contends she properly sued Defendants in both their individual and
22 official capacities. (Doc. # 16 at 12).

23      "Personal-capacity suits seek to impose personal liability upon a government official
24 for actions he takes under color of state law. . . . [T]o establish *personal* liability in a § 1983
25 action, it is enough to show that the official, acting under color of state law, caused the
26 deprivation of a federal right." *Kentucky*, 473 U.S. at 165-66. Defendants concede that it is
27 proper to sue government officials in their personal capacity if a plaintiff pleads
28 "unconstitutional" actions. *See* Doc. # 13-1 at 14. Plaintiff alleged that Defendants violated

her First Amendment rights by not renewing her teaching contract in retaliation for Plaintiff's constitutionally protected speech. Such allegations are sufficient to state a §1983 claim against Defendants in their personal capacities.

## CONCLUSION

IT IS HEREBY ORDERED THAT Defendants' Motion for Judgment on the Pleadings (Doc. # 13) is **DENIED**

DATED: May 28, 2010

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge